In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-211 CR


____________________



CHRISONDATH BADALL, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 75th District Court


Liberty County, Texas


Trial Cause No. CR-24834






OPINION


 A grand jury indicted Chrisondath Badall on a charge of murder. Badall filed a
"Motion to Release Defendant and Set Reasonable Bail," in which Badall alleged that he
could not make the currently set $1,000,000 bail, but could make bail in the amount of
$30,000. He also asserted that the lower amount was reasonable and sufficient to secure
his presence at trial. Following an evidentiary hearing, the trial court entered an order
reciting that Badall had presented an application for a writ of habeas corpus, and that the
petition should be in all things denied. The trial court ordered Badall's bond to remain at
$1,000,000. Badall filed notice of appeal. 

 Issue one concerns appellate jurisdiction. Badall argues that we have jurisdiction
to hear a direct appeal from an interlocutory order denying a reduction in bond. As
authority, he cites Primrose v. State, 725 S.W.2d 254, 255-56 (Tex. Crim. App. 1987). 
Primrose was an appeal from an order denying pretrial bail under Tex. Const. art. I, §
11. The Court of Criminal Appeals dismissed the appeal in Primrose for lack of
jurisdiction, holding that "following an order denying bail pursuant to Art. I, § 11,
appellate jurisdiction lies in the court of appeals under the general jurisdictional provisions
of Article V, §§ 5 and 6 of the Texas Constitution," adding "and in Beck [v. State, 648
S.W.2d 7 (Tex. Crim. App. 1983)] we so held. See also Tex. R. App. Pro. Rule 44." 
Id. A footnote added the following comment: 

 The State in its reply brief, citing Arts. 11.23 and 11.41,
V.A.C.C.P., argues that "habeas corpus is the proper vehicle for people
held without bail under indictment for a capital offense," and that the
"appeal should be dismissed with instructions for [a]ppellant to seek the
recognized and proper method of review, i.e., habeas corpus." However,
Rule 44(a), supra, clearly contemplates direct appeals "in habeas corpus and
bail proceedings...." That appeal is to be "taken to the court of appeals,"
Rule 44(b), supra, and the decision rendered by that court may then be
subject to discretionary review by this Court. Rule 44(e), supra.


Id. at 256, n.3.

Presiding Judge Onion concurred with the following comment: 


 I concur in the result reached that this Court has no jurisdiction of this
matter and that the purported appeal to this Court should be dismissed. I do
not join footnote # 3 of the majority opinion. If this Court does not have
jurisdiction and dismisses a purported appeal, we should not express a first
time opinion that, absent a habeas corpus proceeding, an appeal lies from the
order entered herein. That decision should be made in these proceedings.


Id. at 256 (Onion concurring). 


 While sitting as a visiting judge on an intermediate court of appeals, Judge Onion
explained his reticence when the issue was squarely presented to the court in Ex parte
Shumake, 953 S.W.2d 842 (Tex. App.--Austin 1997, no pet.). Shumake held the appellate
court lacks jurisdiction over an appeal from an interlocutory order raising bail. Id. at 846-47. The opinion noted that habeas corpus applications are separate proceedings from the
criminal prosecutions from which they arise. Id. at 846 n.8. Shumake was followed in
Benford v. State, 994 S.W.2d 404, 408-09 (Tex. App.--Waco 1999, no pet.) (which also
noted that the Court of Criminal Appeals had on several occasions held that appellate
courts lack jurisdiction to hear direct appeals of pre-trial bail rulings), Wright v. State, 969
S.W.2d 588, 589-90 (Tex. App.--Dallas 1998, no pet.), and Vargas v. State, 109 S.W.3d
26, 29 (Tex. App.--Amarillo 2003, no pet.). On the other hand, Ramos v. State, 89
S.W.3d 122, 125-26 (Tex. App.--Corpus Christi 2002, no pet.), held Primrose to be
binding precedent. 

 Perhaps because it would have been dictum, the majority opinion in Primrose did
not address several issues. While the Court of Criminal Appeals recognized that the
appellate rules clearly contemplate direct appeal in bail proceedings, it does not necessarily
follow that the rules contemplate an appeal from interlocutory orders on all bail issues.
More importantly, a rule of appellate procedure provides the mechanism for invoking
appellate jurisdiction but cannot create it. See White v. State, 61 S.W.3d 424, 427-28
(Tex. Crim. App. 2001)("The Rules of Appellate Procedure do not establish jurisdiction
of courts of appeals, but, rather, set out procedures which must be followed in order to
invoke jurisdiction over a particular appeal."). The cited precedent in Primrose was an
appeal from the denial of bail in a habeas corpus proceeding, not an appeal from an
interlocutory order denying a motion for reduction of bail. Beck v. State, 648 S.W.2d at
8. An application for writ of habeas corpus is properly filed as an independent proceeding. 
A request for a bail reduction is merely an incidental motion filed in a criminal
prosecution, not an independent bail proceeding. Regarding appellate jurisdiction, the
distinction between habeas corpus proceedings and interlocutory rulings is well established
in the double jeopardy context. See Apolinar v. State, 820 S.W.2d 792, 794 (Tex. Crim.
App. 1991). The Court of Criminal Appeals did not articulate a rationale for disparate
treatment of pre-trial bail and double jeopardy issues. 

 Our present predicament may be an unintended consequence of a long-standing
tendency towards relaxed application of procedural rules in habeas corpus proceedings. 
For example, when faced with an appeal over which it had no jurisdiction, the Court of
Criminal Appeals treated the appeal as an original proceeding in habeas corpus and
addressed the merits of the issues raised in the brief. Basaldua v. State, 558 S.W.2d 2,
5 (Tex. Crim. App. 1977). (1)
 Because we cannot create jurisdiction where none exists, we
could not treat an appeal from an interlocutory motion as a habeas proceeding. The trial
court, on the other hand, had jurisdiction over the defendant through the indictment and
maintained the power to set his bail. Tex. Code Crim. Proc. Ann. art. 17.09 (Vernon
1977). The order states that the "Petitioner's Application for Writ of Habeas Corpus was
presented to the Court" and that "said petition should be in all things DENIED. 
Petitioner's bond shall remain at $1,000,000.00... ." Although no application for writ of
habeas corpus is to be found in the record, that is not the document from which our
jurisdiction derives. (2) Rather, it is the notice of appeal that invokes our jurisdiction, and

it is the order entered by the trial court that determines our jurisdiction. See  Tex. Const.
art. V, § 6(a) ("Said Court of Appeals shall have appellate jurisdiction co-extensive with
the limits of their respective districts, which shall extend to all cases of which the District
Courts or County Courts have original or appellate jurisdiction, under such restrictions and
regulations as may be prescribed by law."); Tex. Code Crim. Proc. Ann. art. 4.03
(Vernon Supp. 2004) ("The Courts of Appeals shall have appellate jurisdiction coextensive
with the limits of their respective districts in all criminal cases except those in which the
death penalty has been assessed."); Tex. R. App. P. 25.2(b) ("In a criminal case, appeal
is perfected by timely filing a sufficient notice of appeal."). The order entered in this case
is an order ruling on an application for writ of habeas corpus on its merits following an
evidentiary hearing. Such orders are appealable. See Ex parte Hargett, 819 S.W.2d 866,
869 (Tex. Crim. App. 1991). For that reason alone, we find jurisdiction over Badall's
appeal. 

 Issue two contends the trial court erred in denying the appellant's request for a
reduction of his bond to $30,000. Bail may not be excessive. Tex. Const. art. I, § 13. 
The accused bears the burden of establishing that the amount of bail is unreasonable or that
he cannot meet it; we review the trial court's ruling for abuse of discretion. Ex parte
McDaniel, 96 Tex. Crim. 539, 258 S.W. 1057, 1058 (1924). In setting the amount of
bail, the trial court shall consider: (1) the bail shall be sufficiently high to give reasonable
assurance that the undertaking will be complied with; (2) the power to require bail is not
to be so used as to make it an instrument of oppression; (3) the nature of the offense and
the circumstances under which it was committed are to be considered; (4) the ability to
make bail is to be regarded, and proof may be taken upon this point; and (5) the future
safety of a victim of the alleged offense and the community shall be considered. Tex.
Code Crim. Proc. Ann. art. 17.15 (Vernon Supp. 2004). The trial court may also
consider: (1) the accused's work record; (2) his family and community ties; (3) his length
of residency; (4) his prior criminal record; (5) his conformity with previous bond
conditions; (6) the existence of outstanding bonds, if any; and (7) aggravating
circumstances alleged to have been involved in the charged offense. Maldonado v. State,
999 S.W.2d 91, 93 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd), citing Ex parte
Rubac, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981). 

 Badall, a native of Trinidad, lives in Lufkin with his wife, his adult son, and the
son's family. Now a United States citizen, he has operated tire businesses over the last
fifteen years. The Badalls run a tire shop in Lufkin and have done so for about three
years. Four years before that, the appellant owned a tire shop in Liberty. He also owns
tire shops in Baytown and Highlands. The appellant's LaPorte business property is worth
$150,000 to $200,000. The appellant, the victim, and their families shared a close,
longstanding friendship. A dispute arising out of the 1997 sale of the Liberty tire shop to
the victim had two results: civil litigation, which the victim won, and the alleged murder. 
As a result of the litigation, which involved enforcement of a noncompetition clause,
Badall had to close tire shops in Liberty and Cleveland. The trial court heard testimony
that, over the years, Badall had engaged in several other acts of violence involving
weapons. When taken into custody, Badall asked if the victim died; upon being told the
victim was alive, Badall stated, "Then I guess I'll have to get him again."

 There was no evidence regarding the premium for a bail bond in the amount set. 
An attorney, Andrew Lannie, testified that he would not, as a lawyer, sign a million dollar
bond for a person who could secure the bond only with a $150,000 property. Siblings in
New York, Baytown, Kingwood, and Friendswood would be willing to execute a bond if
it were in an amount Badall could make. Family members testified that they presently had
$40,000 in cash available to apply to bail. The Badalls have no checking or savings
accounts. No family members live in Liberty County. Because he carries large sums of
money, Badall is licensed to carry a weapon, so he is usually armed with a pistol, and he
carries a shotgun in his truck. Badall possesses a valid passport. Badall was currently
serving community supervision for Class B misdemeanor driving while intoxicated. His
community supervision officer testified that Badall obtained permission to travel to
Trinidad, then stayed beyond the allotted time and missed his reporting date. He did pay
his fine and fees, but failed to perform court-ordered community service. 

 The amount of bail should be set sufficiently high to give reasonable assurance that
the accused will comply with the undertaking, but should not be set so high as to be an
instrument of oppression. Ex parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977). 
The trial court could reasonably have found that Badall did not carry his burden to
establish that he is unable to make bail. Given his ties to Trinidad, the trial court
reasonably could have concluded that Badall poses a flight risk. From Badall's previous
violent behavior and his additional threats after the shooting, the trial court could also have
reasonably concluded that Badall poses a danger to the community. Nonetheless, the
amount of bail is extraordinarily high, even for a murder case, and the appellant has been
under indictment since January. 

 In conclusion, we hold that the court abused its discretion in setting bond at
$1,000,000. We reverse the trial court's order denying habeas corpus relief. We grant
relief and render judgment that appellant's bail be reduced to $400,000, subject to such
reasonable terms and conditions as may be determined by the district court.

 REVERSED AND RENDERED.

 


 PER CURIAM


Submitted on July 2, 2004

Opinion Delivered July 28, 2004

Do Not Publish 

Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. This trend may not continue. In a different context, the Court of Criminal
Appeals has recently required the practitioners of this State to follow the procedures in the
Code of Criminal Procedure regarding writs of habeas corpus. See Jordan v. State, 54
S.W.3d 783, 786 (Tex. Crim. App. 2001). 

2. Badall's motion for bail reduction invoked no constitutional right, raised no
statutory violation, and did not allege that he was restrained illegally.